# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FIRST STATE ORTHOPAEDICS,  )
P.A., on behalf of itself and all others  )
similarly situated,  )
)
)
Plaintiff,  )
)
v.  ) C.A. No. N15C-12-054 WCC CCLD
)
LIBERTY MUTUAL INSURANCE  )
COMPANY, et al.,  )
)
Defendants.  )

Submitted: July 22, 2020
Decided: November 20, 2020

**Plaintiff First State Orthopaedics, P.A.'s Renewed Motion for Leave to File Second Amended Complaint – DENIED IN PART and GRANTED IN PART**

## MEMORANDUM OPINION

John S. Spadaro, Esquire; John Sheehan Spadaro, LLC, 54 Liborio Lane, Smyrna, DE 19977. Attorney for Plaintiff.

Kevin J. Connors, Esquire; Marshall Dennehey Warner Coleman & Goggin, 1007 North Orange Street, Suite 600, Wilmington, DE 19801. Attorney for Defendants.

Tiffany Powers, Esquire; Andrew Hatchett, Esquire; Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, GA 30309. Attorneys for Defendants.

**CARPENTER, J.**

Before the Court is Plaintiff First State Orthopaedics, P.A.'s ("Plaintiff" or "FSO") Renewed Motion for Leave to File Second Amended Complaint. For the reasons set forth in this Opinion, Plaintiff's Renewed Motion for Leave to File Second Amended Complaint is **DENIED IN PART and GRANTED IN PART**.

## I.    Factual & Procedural Background

In 2015, FSO brought suit against insurer-members of Liberty Mutual ("Defendants" or "Insurers").[1] On April 3, 2017, FSO filed an amended proposed class action Complaint to recover statutory interest allegedly owed under 19 Del. C. § 2322F(h) of the Delaware Workers' Compensation Act.[2] Essentially, FSO is attacking the Insurers' alleged practice of generally refusing to pay the 1% interest on invoices not timely paid as mandated by § 2322F(h), a claim denied by the Defendants.[3]

On May 22, 2018, Plaintiff filed a Motion for Leave to File Second Amended Complaint. Subsequently, Plaintiff filed a Motion for Partial Summary Judgment on the Meaning of Sections 2362(b) and 2322F(h). On July 3, 2018, the Court denied Plaintiff's Motion for Leave to File Second Amended Complaint without prejudice and stayed discovery until the Court resolved the summary judgment motions before

---

[1] Compl. ¶ 1.
[2] *First State Orthopaedics, P.A. v. Liberty Mut. Ins. Co.*, 2019 WL 3797376, at *1 (Del. Super.), *corrected* (Aug. 27, 2019).
[3] *Id.*

1

it.[4] Thereafter, on August 17, 2018, Defendants submitted their Motion for Partial Summary Judgment on Invoices that Defendants Paid within 30 Days of Receipt. On October 5, 2018, Defendants submitted their Motion to Strike Class Allegations.

On August 6, 2019, this Court ruled on Plaintiff's Motion for Summary Judgment finding that under § 2362(b), "if the Insurer contests the invoice <u>or</u> requests further verification, the time for payment and any associated penalty would in essence be stayed until the issue was resolved."[5] Furthermore, if the invoice remains in a disputed classification, no payment is required during that time.[6] However, if it is determined that the insurance company's denial was not justified and payment is ordered, "the interest calculation relates back to the thirty-first day after the invoice was initially received by the insurer."[7]

On February 13, 2020, the Court denied Defendants' Motion for Partial Summary Judgment and granted Defendants' Motion to Strike Class Allegations.[8] The Court granted Defendants' Motion to Strike Class Allegations, ultimately denying Plaintiff's Rule 23(b)(3) class certification, because the proposed class failed to satisfy the commonality requirement.[9] Prior to issuing its Memorandum Opinion on Defendants' motions, Plaintiff informed the Court of its intention to

---

[4] Super. Ct. Proceeding Sheet, E-File 62199880, at 1.
[5] *First State Orthopaedics, P.A.*, 2019 WL 3797376, at *3 (emphasis in original).
[6] *Id.*
[7] *Id.*
[8] *First State Orthopaedics, P.A., v. Liberty Mutual Ins. Co.*, 2020 WL 764149, at *1 (Del. Super.).
[9] *Id.* at *6.

withdraw its request for Rule 23(b)(3) certification and to alternatively seek certification under 23(b)(2).[10] On December 16, 2019, Plaintiff filed its Renewed Motion for Leave to File Second Amended Complaint. Oral argument was held on July 22, 2020.

## II. Standard of Review

Superior Court Civil Rule 15(a) provides that, after the permissive amendment window, a party may only amend a pleading "by leave of court…and leave shall be freely given when justice so requires."[11] Unless presented with evidence of undue delay, bad faith, dilatory motive, prejudice, futility, or the like, the Court must exercise its broad discretion to grant the party leave to amend.[12]

A motion to amend a pleading is deemed futile if the amendment would not survive a motion to dismiss under Superior Court Civil Rule 12(b)(6).[13] A proposed amendment will only be denied under Rule 12(b)(6) if "the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible to proof."[14] When asked to deny a proposed amendment for untimeliness, the Court must consider whether the opposing party will be prejudiced.[15] "The mere

---

[10] *Id.*; Pl.'s Status Report, E-File 63130337, April 3, 2019, at 14.
[11] Del. Super. Ct. Civ. R. 15(a).
[12] *Parker v. State*, 2003 WL 24011961, at *3 (Del. Super.); *Howell v. Kusters*, 2010 WL 877510, at *1 (Del. Super.).
[13] *Aug. v. Hernandez*, 2020 WL 95658, at *4 (Del. Super.) (citing *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 2008 WL 555919, at *1 (Del. Super.)).
[14] *Id.*
[15] *See Rinaldi v. Iomega Corp.*, 2000 WL 973257, at *1 (Del. Super.).

3

fact tha[t] an amendment is offered late in the case is not enough to bar it if the other party is not prejudiced."[16]

## III. Discussion

Plaintiff is asking the Court to grant leave to file a second amended Complaint.[17] Plaintiff proposes three substantial changes as well as "housekeeping issues, such as the correction of typographical errors, stylistic changes, and the like."[18] Because Defendants do not contest Plaintiff's cosmetic changes,[19] the Court grants these amendments insofar as the changes are consistent with the Court's Opinion.

Plaintiff's first substantial amendment "sets forth a new class definition" that includes all Delaware health care providers who have submitted invoices for workers' compensation claimants to Defendants since December 4, 2012.[20] Plaintiff argues that all Delaware providers who submit workers' compensation claims to Defendants have an interest in Defendants' statutory compliance.[21]

---

[16] *Id.* (citing *Itek Corp. v. Chicago Aerial Indus., Inc.*, 257 A.2d 232, 234 (Del. Super. Ct. 1969), *aff'd*, Del. Supr., 274 A.2d 141 (1971)).
[17] Pl. First State Orthopaedics, P.A.'s Renewed Mot. for Leave to File Second Am. Compl. at 1 [hereinafter "Pl.'s Renewed Mot. to File Second Am."].
[18] *Id.* at 5.
[19] *See* Defs.' Opp'n to Pls.' Mot. for Leave to File Second Am. Compl. [hereinafter "Defs.' Opp'n"].
[20] *Id.* at 2.
[21] *Id.*

4

Plaintiff's second proposed amendment "abandons FSO's classwide claim for money damages, and replaces it with a prayer for declaratory relief."[22] The Court previously denied class certification under Rule 23(b)(3) for lack of commonality,[23] and Plaintiff now seeks certification under Rule 23(b)(2). Plaintiff maintains that it's second proposed amendment "resolve[s] the Court's concerns regarding management of the proposed class."[24] Plaintiff also believes that alternatively seeking 23(b)(2) certification will resolve the Court's commonality concerns.[25]

In support of Rule 23(b)(2) certification, Plaintiff argues that the class has a single common issue: "whether defendants have made a practice of ignoring their obligation to pay statutory interest."[26] Moreover, unlike Rule 23(b)(3),[27] Plaintiff contends that Rule 23(b)(2) certification will not require individual notice to all class members.[28] Plaintiff also maintains that declaratory relief under 23(b)(2) will "have the practical effect of classwide injunctive relief."[29] Specifically addressing the Court's prior commonality concern, Plaintiff argues that Rule 23(b)(2) certification will not "require the production or review of each and every health care invoice submitted during the class period, or the calculation of interest for even a single such

---

[22] *Id.* at 3.
[23] *First State Orthopaedics, P.A.*, 2020 WL 764149, at *6.
[24] Pl.'s Renewed Mot. to File Second Am. at 3.
[25] *See Id.* at 4.
[26] *Id.*
[27] Del. Super. Ct. Civ. R. 23(c)(2) ("In any class action maintained under paragraph (b)(3), the Court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.").
[28] Pl.'s Renewed Mot. to File Second Am. at 3-4.
[29] *Id.* at 3.

invoice."[30] Rather, Plaintiff suggests that 23(b)(2) certification can be accomplished via a sampling of claims using Defendants' receipts.[31] Additionally, Plaintiff contends that the jury can use these samplings to reach a decision.[32]

Plaintiff's third proposed amendment adds an individual bad faith breach of contract claim for only FSO.[33] Plaintiff maintains that FSO's "patients have assigned to FSO the right to pursue bad faith claims in connection with FSO's invoices."[34] Considering this assignment and that FSO's current sampling demonstrates statutory interest is due on over 200 invoices, Plaintiff argues that a jury could find Defendants acted in bad faith.[35] Plaintiff asserts that Defendants will not be prejudiced by its proposed amendments, because a trial date has not been set and Defendants have not responded to discovery.[36]

In opposition to Plaintiff's proposed amendments, Defendants argue that Plaintiff's motion is "untimely, improperly motivated, and futile."[37] Defendants assert that over 17 months ago Plaintiff notified Defendants of its intention to file a bad faith claim.[38] Defendants conclude that, without a "legitimate justification for its delay," Plaintiff's bad faith amendment should be deemed untimely.[39] Defendants

---

[30] *Id.* at 4.
[31] *Id.* Zoom Court Scribes, Oral Argument, July 22, 2020.
[32] *Id.*
[33] *Id.* at 5.
[34] *Id.*
[35] *Id.*
[36] *Id.* at 6.
[37] Defs.' Opp'n. at [unpaginated] 2.
[38] *Id.* at ¶ 2.
[39] *Id.* at ¶ 3.

also argue that Plaintiff's class certification amendment is untimely.[40] Defendants contend that not only is Plaintiff filing a motion to amend its Complaint four years into litigation, but Plaintiff informed the Court over nine months ago that it intended to change its class certification theory.[41] Defendants argue that this elapsed time is "inexcusable and grounds for denying the motion."[42]

Moreover, Defendants maintain that Plaintiff's motion amounts to "procedural posturing" and thus is improperly motivated.[43] Defendants claim that when Plaintiff first notified Defendants of its proposed bad faith amendment, Plaintiff expressed that it was informing Defendants so Defendants could better assess its settlement offer; Defendants perceived this as a threat.[44] Defendants reason that Plaintiff's delay in amending its Complaint and having damages estimated significantly lower than what Plaintiff originally calculated "suggests that FSO's motion is designed to create leverage, not advance meritorious claims."[45]

Defendants also argue that Plaintiff's bad faith and class certification amendments are futile.[46] First, Defendants call into question Plaintiff's ability to pursue bad faith claims on behalf of Plaintiff's patients.[47] Defendants assert that

---

[40] *Id.* at ¶ 6.
[41] *Id.*
[42] *Id.*
[43] *Id.* at ¶ 4.
[44] *Id.* at ¶ 2.
[45] *Id.* at [unpaginated] 1, ¶¶ 2, 4.
[46] *Id.* at ¶¶ 5, 7.
[47] *Id.* at ¶ 5.

Plaintiff has not provided proof of an assignor-assignee relationship and has not cited legal authority "allowing it to pursue a bad-faith claim as assignee."[48] Before continuing with a bad faith amendment, Defendants believe Plaintiff should be required to provide this information.[49]

Next, noting the Court's denial of Plaintiff's 23(b)(3) class for lack of commonality, Defendants contend that seeking 23(b)(2) certification will not change the Court's commonality analysis and thus Plaintiff has still not satisfied Rule 23(a)'s commonality prerequisite.[50] Additionally, Defendants argue that under *Wal-Mart Stores, Inc. v. Dukes*[51] a 23(b)(2) class cannot be certified when class members are entitled to distinct monetary damages and monetary relief is not incidental to the declaratory judgment sought.[52] Defendants emphasize that Plaintiff is seeking individual monetary damages that are not auxiliary to its request for declaratory relief.[53]

Defendants also aver that a class amendment is futile because the Court "issued an order defining Defendants' obligations under the prompt-pay statute," and a declaratory judgment would "require that Defendants comply with the Court's

---

[48] *Id.*
[49] *Id.*
[50] *Id.* at ¶ 7.
[51] 564 U.S. 338 (2011).
[52] Defs.' Opp'n at ¶ 7. The Court will not address Defendants' analysis of *Wal-Mart Stores, Inc. v. Duke* as the Court bases its decision on separate legal grounds.
[53] *Id.*

8

existing order."[54] Lastly, Defendants contend that, with Plaintiff seeking individual damages for itself and declaratory relief for the class, Plaintiff is no longer adequate to represent the class.[55] Defendants maintain that with Plaintiff's amendment, FSO's interests diverge from the class' interests.[56]

## A.    Class Certification and Definition Amendments

The Court will first address Plaintiff's class certification amendment, which seeks Rule 23(b)(2) certification instead of Rule 23(b)(3) certification. Considering Plaintiff's proposed amendment, the Court finds it worthwhile to highlight the purpose of class actions and the relevant classes. First, it is well known that class actions are founded on the "[e]quitable notions of fairness and efficiency."[57] Specifically, class actions are used to "achieve judicial economy by avoiding multiple lawsuits" and are used to "vindicat[e] the rights of those who would not advance claims on an individual basis for practical reasons such as cost, temerity, or ignorance."[58]

---

[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *In re Celera Corp. S'holder Litig.*, 59 A.3d 418, 434 (Del. 2012) (citing *In re Countrywide Corp. S'holders Litig.*, 2009 WL 846019, at *10 (Del. Ch.)). *See* 1 R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 13.20 (3d ed.1998).
[58] 1 R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 13.20 (3d ed.1998).

As explained in the Delaware Superior Court Rules of Civil Procedure, Rule 23(b)(2) class certification applies where "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."[59] When granted injunctive relief or corresponding declaratory relief under Rule 23(b)(2), the class is afforded a court order "settling the legality of the behavior" in dispute.[60] More importantly, the Court will approve a Rule 23(b)(2) class only where declaratory or injunctive relief is appropriate.[61]

Fundamentally, Rule 23(b)(2) serves as a vehicle to enjoin conduct.[62] Delaware courts have clarified that when a plaintiff seeks "corresponding declaratory relief," a plaintiff is essentially seeking "the basis for later injunctive relief."[63] Although declaratory and injunctive relief are interrelated, in practicality both forms of relief are distinct. Declaratory judgment "is intended to provide a remedy where no other remedy is available under circumstances where an impending injury has not as yet occurred."[64] In other words, declaratory judgment establishes the legal rights of a party before the party is injured, although injury is

---

[59] Del. Super. Ct. Civ. R. 23(b)(2)

[60] *See Nottingham Partners v. Dana*, 564 A.2d 1089, 1095 (quoting Fed.R.Civ.P. 23 Advisory Committee's Note (1966), *reprinted in* 39 F.R.D. 95, 98 (1966)).

[61] *Id.*

[62] *See Nottingham Partners*, 564 A.2d at 1096. *See also Joseph v. Shell Oil Co.*, 1985 WL 21125, at *4 (Del. Ch.)

[63] *Stratton v. Am. Indep. Ins. Co.*, 2010 WL 3706617, at *8 n.78 (Del. Super.) (citing 1 R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 13.28 (3d ed.1998)).

[64] *Hampson v. State ex rel. Buckson*, 233 A.2d 155, 156 (Del. 1967). *See Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662 (Del. 1973).

anticipated.[65] Essentially, declaratory relief is "remedial in character" and "promote[s] preventive justice."[66] Injunctive relief is typically sought once a plaintiff has suffered an actual injury.[67] Taken in tandem, a declaratory judgment sets the stage for injunctive relief by establishing the bounds of a plaintiff's legal rights. Once established, if a plaintiff's legal rights are then violated, a plaintiff may refer a court to its declaratory judgment and seek injunctive relief for any actual harm caused.

The main difference between Rule 23(b)(2) and Rule 23(b)(3) certification lies in the remedy sought; the former seeks a court order to control the defendant's behavior or to establish the plaintiff's legal rights and the latter seeks monetary damages. Each class serves a specified purpose and is not a mere back stop in the event that one theory fails. Nevertheless, whether a Rule 23(b)(2) or Rule 23(b)(3) class is proposed, the Court emphasizes that the class remedy sought must be appropriate considering the facts of the case.[68]

---

[65] *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1237–38 (Del. Ch. 1987) ("The notion laying behind [declaratory judgment] is that legitimate legal interests are sometimes cast into doubt by the assertion of adverse claims and that, when this occurs, a party who suffers practical consequences ought not to be required to wait upon his adversary for a judicial resolution that will settle the matter."). *See Leon N. Weiner & Assocs., Inc. v. Krapf*, 584 A.2d 1220, 1227 (Del. 1991) (where a plaintiff sought declaratory relief against a class of defendants, the Court held "[w]hether the legal issue is ultimately resolved in favor of plaintiff or the defendants, it is clear that plaintiff's rights must be determined against the class as a whole so that the parties may obtain a resolution of the conflict that eliminates uncertainty.").

[66] *Rollins Int'l, Inc.*, 303 A.2d at 662; *Stabler v. Ramsay*, 32 Del. Ch. 547, 557, 88 A.2d 546, 551, adhered to on reh'g, 33 Del. Ch. 1, 89 A.2d 544 (1952).

[67] *Delaware Troopers' Fraternal Order of Police, Lodge No. 6 v. Graviet*, 1988 WL 44787, *1 (Del. Supr.); *Biggins v. Minner*, 959 2008 WL 4233311, *1 (Del. Supr.) (holding that "absent any allegation of actual injury, [plaintiff] could not succeed on the merits of his claim for injunctive relief.").

[68] *See Nottingham Partners*, 564 A.2d at 1095.

In making its decision, the Court has paid special attention to the underlying purpose of class actions and declaratory relief. Although Plaintiff correctly argues that declaratory judgment forms the basis for injunctive relief which in turn would require Defendants to pay interest,[69] the Court finds that Rule 23(b)(2) class certification is not appropriate in this instance because Plaintiff has already attained the remedy sought. The Court's previous Memorandum Opinion expounded on Defendants' statutory duty to pay interest.[70] It clearly established the obligation of Defendants to pay interest once any dispute regarding the invoice is resolved adverse to the insurance carrier and further related back that interest obligation to the time interest would have been due under the statute.

This Opinion is the law clarifying 19 Del. C. §§ 2362(b) and 2322F(h) of the Delaware Workers' Compensation Act and would remain so unless reversed by the Supreme Court. Therefore, a declaratory judgment establishing Defendants' obligation to pay interest is unnecessary when the Court's Opinion already establishes Defendants' duty to pay interest and when Plaintiff's legal rights are affected. The Court does not see how pursuing declaratory relief will differ or add to what the Court has ordered. Moreover, the Court's Opinion sufficiently reflects the obligations and rights of both the medical providers and the insurance carriers.

---

[69] Zoom Court Scribes, Oral Argument, July 22, 2020.
[70] *First State Orthopaedics, P.A. v. Liberty Mut. Ins. Co.*, 2019 WL 3797376, at *6 (Del. Super.), *corrected* (Aug. 27, 2019).

In fact, if Defendants do not pay interest in accordance with the Court's Opinion, Plaintiff may then attempt to seek class wide injunctive relief using the Court's Opinion as its basis.

It is also unclear how injunctive action is an appropriate remedy to pursue at this point in the litigation. The Court's Opinion clarified a confusing statute and clearly established when the obligation of the insurance carrier is created. Now that the issue is resolved, if Defendants continued the practice asserted by Plaintiff, perhaps at that time injunctive relief and class certification under Rule 23(b)(2) would be appropriate. But that appears not to be the intent of Plaintiff here. Plaintiff is looking to punish Defendants for past conduct and for damages related to past invoices. While Plaintiff's litigation has now established the rules Defendants must follow, there is nothing to suggest Defendants are continuing to violate the Court's Opinion which would warrant injunctive action.

Because the Court's previous Opinion serves the same purpose as declaratory judgment, under the facts here the Court finds that Rule 23(b)(2) relief is not appropriate. Furthermore, to certify a Rule 23(b)(2) class where the remedy sought has been effectuated would be contrary to the class action's principle of efficiency. Therefore, the Court finds that granting Plaintiff's class amendment seeking

13

declaratory judgment would be redundant and against judicial economy.[71] Plaintiff's Motion is simply an attempt to circumvent the Court's denial of class certification and to create another path towards compensation.

Considering that the Court's previous Opinion provides the remedy sought under Rule 23(b)(2), the Court finds that denying Plaintiff's 23(b)(2) amendment would not be in conflict with what justice demands. For the sake of preserving judicial economy and upholding the purpose of a class action suit, Plaintiff's class certification amendment seeking declaratory relief is denied. Accordingly, because the Court is denying Plaintiff's 23(b)(2) class amendment, the Court also denies Plaintiff's class definition amendment. This of course does not end the litigation. Counsel is still free to pursue the interest claim on behalf of FSO if the client believes such action is warranted and cost efficient.

## B. FSO's Bad Faith Claim

In sum, Defendants argue that Plaintiff's amendment to add FSO's individual bad faith claim is futile, untimely, and improperly motivated.[72] The Court disagrees. Specifically, with regards to futility, the Court finds that Plaintiff's bad faith amendment would survive a Rule 12(b)(6) motion to dismiss for failure to state a

---

[71] *See Burris v. Cross*, 583 A.2d 1364, 1372, 1374 (Del. Super. Ct. 1990) (in deciding whether to entertain a request for declaratory judgment under 10 Del. C., § 6501, *et seq.*, the court noted its concerns for practicality and judicial economy).

[72] Defs.' Opp'n at ¶¶ 3, 4, 5.

claim. The Delaware Supreme Court has long held that employees are entitled to pursue bad faith claims against workers' compensation insurers because employees are the intended beneficiaries of such contracts.[73] It is reasonably conceivable that an employee-patient would assign her contractual rights to pursue a bad faith breach of contract claim to her medical provider; typically, to be paid for their service, medical providers submit the cost of the employee-patient's treatment to the insurer and manages nonpayment should an issue arise. Consequently, Plaintiff's bad faith amendment would survive a motion to dismiss and therefore the Court finds that Plaintiff's proposed amendment is not futile. The Court notes that Plaintiff bears the burden of proving that FSO's patients assigned FSO the right to pursue a bad faith breach of contract claim.

Next, considering the procedural history of this case and Defendants' failure to show prejudice, the Court finds that Plaintiff's bad faith amendment is not untimely. Although Defendants contend that Plaintiff informed Defendants of its intention to file a bad faith amendment over 17 months ago, Plaintiff maintains that the particular bad faith claim Defendants reference was in regards to a separate practice and transaction.[74] In essence, Plaintiff explains that the grounds for the other

---

[73] *Pierce v. Int'l Ins. Co. of Illinois*, 671 A.2d 1361, 1362, 1366 (Del. 1996).
[74] Zoom Court Scribes, Oral Argument, July 22, 2020.

bad faith claim mentioned is distinct from FSO's now proposed bad faith amendment.[75]

More importantly, Plaintiff first filed its Motion for Leave to File a Second Amended Complaint on May 22, 2018, which the Court denied without prejudice because it wanted to first make a decision on the parties' Motions for Summary Judgment.[76] On August 6, 2019, the Court filed its Memorandum Opinion on Plaintiff's Motion for Summary Judgment on the Meaning of Sections 2362(b) and 2322F(h) and on Defendants' Cross-Motion for Partial Summary Judgment on the same statutory provisions. About four months later, on December 16, 2019, Plaintiff filed its Renewed Motion for Leave to File Second Amended Complaint.

Defendants have not shown how this four month delay has prejudiced the Insurers such that the Court must deem Plaintiff's amendment untimely.[77] Delaware courts have found prejudice where a plaintiff's amendment, filed several years into litigation, presented new factual allegations and new legal inquires.[78] Delaware courts have also found prejudice where leave to amend was filed at a time when relevant evidence and witnesses could no longer be located.[79] Considering the facts

---

[75] Zoom Court Scribes, Oral Argument, July 22, 2020.

[76] Super. Ct. Proceeding Worksheet, E-File 62199880, at 1.

[77] *See* Defs.' Opp'n.

[78] *See Bowl-Mor Co. v. Brunswick Corp.*, 297 A.2d 61, 63 (Del. Ch. 1972) (finding prejudice where the plaintiff sought to amend its complaint, seven years into litigation, to included anti-trust claims relying on the laws of 10 states which presented new factual and legal inquiries).

[79] *See Lustgarten v. Philips, Inc*, 1981 WL 7628, at *3 (Del. Ch.) (holding that the defendants were prejudiced by the plaintiff's motion to amend his pleading because, filed nine years into litigation, the records and witness were no longer available).

of this case, the Court does not find that Defendants will be prejudiced. Plaintiff intends to use evidence showing interest payments are owed to also prove bad faith. Therefore, the bad faith amendment does not aver new factual allegations or new substantial legal questions. Accordingly, with just the passage of time and no prejudice to the Defendants, the Court finds that Plaintiff's bad faith amendment is not untimely.

Lastly, the Court finds that Plaintiff's bad faith amendment was not improperly motivated. Defendants argue that, even if the Court finds Plaintiff's amendment is not untimely, the Court should still consider Plaintiff's 17 month delay in amending its Complaint and the alleged change in Plaintiff's damages.[80] As above, Plaintiff maintains that Defendants' 17 month time frame is with regards to another matter not before this Court.[81] To find that Plaintiff's bad faith amendment is improperly motivated when the Court specifically denied Plaintiff's first Motion for Leave to File Second Amended Complaint without prejudice to settle the parties' summary judgment issues is unreasonable. Even though Defendants consider Plaintiff's motion improperly motivated, there is nothing to support that.[82] Moreover, even if the litigation tides have changed for Plaintiff that alone does not

---

[80] *Id.* at ¶ 4.
[81] Zoom Court Scribes, Oral Argument, July 22, 2020.
[82] *See Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, 2010 WL 599330, at *3 (Del. Super.) (finding undue delay and procedural manipulation because the plaintiff first sought to amend its complaint in a lower court but withdrew its motion without reason and subsequently filed the same motion to amend in a higher court when it was in the plaintiff's benefit).

prove improper motive.[83] Thus, the Court finds that Plaintiff's bad faith amendment is not futile, untimely, or improperly motivated. The Court grants Plaintiff's amendment with respect to including FSO's bad faith claim.

Now that the Court has issued its decision, it is the Court's understanding that litigation will center on the alleged 1% statutory interest owed to Plaintiff and on Plaintiff's related bad faith claim.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Renewed Motion for Leave to File Second Amended Complaint is **DENIED IN PART and GRANTED IN PART**.

**IT IS SO ORDERED.**

Judge William C. Carpenter, Jr.

---

[83] *See Kraus v. State Farm Mut. Auto. Ins. Co.*, 2004 WL 2830889, at *6, *7 (Del. Super.) (denying the plaintiffs' proposed amendment because "[a]llowing Plaintiffs to amend their complaint to aver contradictory facts, as opposed to averring a newly discovered fact or an alternative theory of the case, would be an attempt to 'manipulate the course of litigation'" and "abuse the pleading process." Further noting that "[w]hen there is evidence that the plaintiff was aware of 'facts and fail[ed] to included them in the complaint [this circumstance] might give rise to the inference that the plaintiff was engaging in tactical maneuvers to force the court to consider various theories seriatim.'").